**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of LGS GROUP, LLC | |
| Plaintiff, | |
| vs. | Case No. |
| ODYSSEY INTERNATIONAL, INC. | |
| And | |
| SAFECO INSURANCE COMPANY OF AMERICA | |
| Defendants. | |

## <u>COMPLAINT</u>

Now comes the United States of America, for the use and benefit of the Plaintiff LGS Group, LLC (hereinafter "LGS"), by and through counsel Shawn C. Whittaker and William E. Erhart, and submits this Complaint against the Defendants Odyssey International, Inc. (hereinafter "Odyssey"), and SAFECO Insurance Company of America (hereinafter "Safeco") and in support thereof states the following:

## <u>PARTIES AND JURISDICTION</u>

1.    Plaintiff LGS is a limited liability company organized pursuant to the laws of the state of Delaware and is located at 80 Fisher Rd., Unit 49, Cumberland, Rhode Island 02864.

2.   Defendant Odyssey is a corporation organized pursuant to the laws of the State of Utah and is located at 560 W. 1700 S., Clearfield, Utah 84015.

3.   Defendant Safeco is a surety company organized pursuant to the laws of the state of Washington and is located at Safeco Plaza, Seattle, Washington 98185.

4.   This Court has jurisdiction of this action pursuant to 40 U.S.C. §3133.

## FACTS RELEVANT TO ALL COUNTS

5.   Plaintiff LGS incorporates the preceding allegations as if fully set forth herein and further states the following:

6.   Prior to December 4, 2006, Defendant Odyssey entered into a written contract, W912BU-06-C0008, with the United States of America, acting by and through the United States Army Corps of Engineers, Philadelphia District, for improvements and renovations for the C-17 Flight Simulator located at Dover Air Force Base, Dover, Delaware.  (hereinafter referred to as the "Project").

7.   Defendant Odyssey together with Defendant Safeco had duly executed and delivered to the United States of America, acting by and through the United States Army Corps of Engineers, a payment bond, bond number 6431948, for the protection of all persons supplying labor and material in the prosecution of the

work provided for in said contract. *See bond attached as Exhibit A and incorporated herein by reference.*

8.    On or about December 4, 2006, Plaintiff LGS contracted with Defendant Odyssey to furnish drywall, painting, metal studs, and EIFS work associated with the Project. *See a copy of the subcontractor agreement attached as Exhibit B and incorporated therein.*

9.    The total amount of the subcontract was $431,055.00. *See Exhibit B.*

10.    There were approved change orders on the Project in the amount of $12,621.69.

11.    The total amount of the Project with change orders was $443,676.69.

12.    Plaintiff LGS completed its work in accordance with the subcontract agreement.

13.    Defendant Odyssey made one payment in the amount of $14,110.00 to the Plaintiff LGS, leaving a balance due of $429,566.69.

14.    Pursuant to the terms of the subcontract, all payments had to be made directly to Plaintiff LGS or by joint check. *See Exhibit B at § 3.7.*

15.   Defendant Odyssey has failed to pay funds due and owing to Plaintiff LGS for its work on the Project pursuant to the terms of the subcontract.

16.   The remaining amount owed for work completed under the subcontract is $429,566.69.   Despite demand by Plaintiff LGS for payment, Defendant Odyssey has failed and refused to pay the balance under the subcontract.

17.   The date on which Plaintiff LGS last supplied labor to the Project was October 15, 2007.

18.   On December 14, 2007, Plaintiff LGS, through counsel, served notice of its claim on Defendant Odyssey and Defendant Safeco.   *See notice with certified mail receipts attached as Exhibit C.*

19.   On December 19, 2007, Defendant Odyssey received notice of Plaintiff LGS' claim.   *See green card attached as Exhibit D.*

20.   On December 19, 2007, Defendant Safeco received notice of Plaintiff LGS' claim.   *See green card attached as Exhibit E.*

21.   Despite notice and demand, the Defendants have failed to remit the balance due.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT AGAINST DEFENDANT ODYSSEY**</u>

22.   Plaintiff LGS incorporates the preceding allegations as if fully set forth herein and further states the following:

23.   Plaintiff LGS and Defendant Odyssey entered into the subcontract, a valid, binding, and enforceable written contract.

24.   Plaintiff LGS performed in accordance with the terms of the subcontract.

25.   By failing to remit the balance due of $429,566.69, Defendant Odyssey has breached its subcontract with Plaintiff LGS.

26.   Plaintiff LGS has suffered damages in the amount of $429,566.69 due to Defendant Odyssey's breach of the subcontract.

27.   Pursuant to § 14.4 of the subcontract, the prevailing party shall be entitled to recover its attorneys' fees, costs, and expenses.

WHEREFORE, the Plaintiff LGS Group, LLC prays for judgment against Defendant Odyssey International, Inc. for:

(a)   An amount of at least $429,566.69 as compensatory damages;

(b)      Pre-judgment interest;

(c)      Attorneys' fees and expenses;

(d)      Costs of this action; and

(e)      Any other remedy this Court deems just and proper.

## COUNT II
## QUASI-CONTRACT/UNJUST ENRICHMENT AGAINST DEFENDANT ODYSSEY

28.   Plaintiff LGS incorporates the preceding allegations as if fully set forth herein and further states the following:

29. Plaintiff LGS furnished drywall, painting, metal studs, and EIFS work to Defendant Odyssey for Defendant Odyssey to complete its work for the Project.

30. Even if no express contract is found as to some or all of the aforesaid labor and equipment furnished by Plaintiff LGS to Defendant Odyssey, said work was furnished at the request of Defendant Odyssey and conferred a benefit on Defendant Odyssey.

31. Defendant Odyssey's requests implied a promise to compensate Plaintiff LGS for the labor and equipment furnished by Plaintiff LGS.

32. Defendant Odyssey has, and had at all times pertinent hereto, an appreciation and/or knowledge of the benefit conferred by Plaintiff LGS and accepted or retained the benefit of Plaintiff LGS's work without paying the reasonable value of said work.

33. Defendant Odyssey knew that Plaintiff LGS expected to be compensated for its labor.

34. The reasonable value of the labor and equipment furnished by Plaintiff LGS to Defendant Odyssey for which it has not been paid is $429,566.69.

35. Despite demand by Plaintiff LGS, Defendant Odyssey has failed and refused to pay the balance due of $429,566.69 to compensate Plaintiff LGS for the value of the labor and equipment furnished as aforesaid; Plaintiff LGS is damaged in said amount.

WHEREFORE, the Plaintiff LGS prays for judgment against Defendant Odyssey for:

(a)  An amount of at least $429,566.69 as compensatory damages;

(b)     Pre-judgment interest;

(c)     Costs of this action; and

(d)     Any other remedy this Court deems just and proper.

**COUNT III**
**MILLER ACT CLAIM AGAINST DEFENDANT SAFECO AND DEFENDANT ODYSSEY**

36. Plaintiff LGS incorporates the preceding allegations as if fully set forth herein and further states the following:

37. Defendant Safeco failed to remit payment to Plaintiff LGS in the amount of $429,566.69.

38. Plaintiff LGS is bringing this action against Defendant Safeco less than one year of its last performance to collect monies owing from Defendant Safeco to Plaintiff LGS.

39. Pursuant to § 14.4 of the subcontract, the prevailing party shall be entitled to recover its attorneys' fees, costs, and expenses.

WHEREFORE, the Plaintiff LGS Group, LLC prays for judgment against Defendant Safeco Insurance Company of America and Defendant Odyssey, Internatioal, Inc., jointlly and severally, for:

(a) An amount of at least $429,566.69 as compensatory damages;

(b)    Attorneys' fees and expenses;

(c)    Pre-judgment interest;

(d)    Costs of this action; and

(e)    Any other remedy this Court deems just and proper.


Date: January 9, 2008

Respectfully submitted,

*/s/William W. Erhart*
William W. Erhart (ID # 2116)
800 King Street
Suite 302
Wilmington, DE 19801
(302) 651-0113
Attorneys for LGS Group, LLC


Of Counsel

Shawn C. Whittaker
1010 Rockville Pike, Suite 607
Rockville, MD 20852
(301)838-4502

BOND NUMBER: 6431948

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) 13 JUL 06 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

**PRINCIPAL (Legal name and business address)**
**Odyssey International**
**560 West 1700 South**
**Clearfield, UT 84015**

**TYPE OF ORGANIZATION ("X" one)**

☐ INDIVIDUAL    ☐ PARTNERSHIP

☐ JOINT VENTURE    ☒ CORPORATION

**STATE OF INCORPORATION**
**Utah**

**SURETY(IES) (Name(s) and business address(es))**
**SAFECO Insurance Company of America**
**A Washington Corporation**
**SAFECO Plaza, 4333 Brooklyn Avenue N.E.**
**Seattle, WA 98185**

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 5 | 495 | 793 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 30 JUN 06 | W912BU-06-C-0008 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all person having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| **Odyssey International** | PRINCIPAL | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | Seal |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. | (Seal) |
| NAME(S) (Typed) | 1. | 2. | |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | SAFECO Insurance Company of America SAFECO Plaza, 4333 Brooklyn Avenue N.E., Seattle, WA 98185 | STATE OF INC. Washington | LIABILITY LIMIT $ | Corporate |
| | SIGNATURE(S) | 1. | 2. | | Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Stirling S. Broadhead, Attorney-In-Fact 1100 E. 6600 S., #400, Salt Lake City, UT 84121-2400 | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

25-205

STANDARD FORM 25-A    (REV. 10-98)
Prescribed by GSA — FAR (48 CFR) 53.2228(c)

| CORPORATE SURETY(IES) (Continued) | | | | |
|---|---|---|---|---|

**SURETY B**

| | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

**SURETY C**

| | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

**SURETY D**

| | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

**SURETY E**

| | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

**SURETY F**

| | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

**SURETY G**

| | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)"

on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25-A (REV. 10-98) BACK



CONSTRUCTION SERVICES

THIS IS A LEGALLY BINDING AGREEMENT UPON WHICH
ODYSSEY INTERNATIONAL INCORPORATED RELIES.  PLEASE READ IT CAREFULLY.

## SUBCONTRACT AGREEMENT

PROJECT NAME:     **C-17 FLIGHT SIMULATOR, DOVER AIR FORCE BASE, DELAWARE**
CONTRACT:     **W912BU-06-C-0008**
LOCATION:     **DOVER, DELAWARE**
OWNER:     **US ARMY CORPS OF ENGINEERS, PHILADELPHIA DISTRICT**

THIS AGREEMENT is made at Clearfield, Utah on 12/4/2006, between Odyssey International Incorporated (Contractor) and LGS GROUP, LLC (Subcontractor), an independent contractor.

In consideration of these covenants, Contractor and Subcontractor agree as follows:

I.      **SCOPE OF WORK**

1.1 Subcontractor's Work.  The Work to be performed by Subcontractor under the terms of this Agreement consists of furnishing all supervision, management, expertise, scheduling, labor, materials, tools, implements, equipment, licenses, permits, fees, etc. to do all of the Work identified in 1.1.1 below, The Work to be performed by Subcontractor includes the Work specifically set forth in this Agreement as well as any and all other incidental or related Work, including any Work reasonably necessary for a complete and proper Project.  Contractor reserves the right to issue additional and supplemental change orders, which shall be deemed, incorporated into this Agreement, all of which shall be referred to as the Work.

1.1.1     **Description of Work**

DIVISION(S):     SECTION: 5400     DESCRIPTION: COLD FORMED METAL FRAMING
                 SECTION: 7100     DESCRIPTION: INSULATION
                 SECTION: 6100     DESCRIPTION: ROUGH CARPENTRY (WOOD BLOCKING)
                 SECTION: 7240     DESCRIPTION: EIFS
                 SECTION: 7840     DESCRIPTION: FIRESTOPPING
                 SECTION: 9250     DESCRIPTION: GYPSUM BOARD
                 SECTION: 9510     DESCRIPTION: ACOUSTICAL CEILINGS
                 SECTION: 9900     DECRIPTION: PAINTS AND COATINGS

INCLUSIONS: ALL WORK PERFORMED PER QUOTES DATED 9/23/06 AND 10/23/06 AND SEPARATE QUOTE SHEET SHOWING ADDENDUMS 3 AND 4 ADDS AND DEDUCTS. ALL ATTACHED AS EXHIBIT "A". ALL WORK AS INDICATED IN PLANS AND SPECIFICATIONS, AND AS REVISED IN ADDEMDUMS 1-4. WORK SCOPE INCLUDED SUPPYING AND INSTALLING MATERIALS REQUIRED FOR: COLD FORMED METAL FRAMING, INSULATION, WOOD BLOCKING AS REQUIRED, EIFS SYSTEM, FIRESTOPPING, GYPSUM BOARD, ACOUSTICAL CEILINGS, AND PAINT AND EPOXY COATINGS. METAL FRAMING INCLUDES ALL LAYOUT AND INSTALLATION OF THE HOLLOW METAL FRAMES

Additional Commercial Terms:  To supply all necessary labor, materials, equipment, including but not limited to all permits, fees, taxes, licenses, delivery charges, hoisting, and daily clean-up (including dump fees), as necessary to provide a complete scope of work as described, per the plans, specifications, addenda's, drawings, schedules and any

supplemental and general requirements. Subcontractor agrees to comply with all applicable codes, ordinances, and or governing agencies having authority over the work. Each subcontractor will be required to work at a minimum, a 5-day work week and have a foreman who is fluent in English present at the jobsite with decision making capabilities during all working hours. Subcontractor agrees to comply with all OSHA and Odyssey International Incorporated accident and prevention plans and safety policies. Each subcontractor shall comply with all requirements in the Contract Work Hours and Safety Standards Act.

**ALL ABOVE FOR THE LUMP SUM OF $ 431,055.00**

1.2 Owner Furnished Materials.

      Not Applicable.

    1.3 Shop Drawings. Within three weeks from the date of this Subcontract, Subcontractor will submit shop drawings, samples, templates, and material lists, and will take any action needed to provide for anchorage, embedded items, long-lead-time orders, and the like. Subcontractor will check the drawings and advise Contractor in writing if any item to be furnished by Subcontractor will not fit the space provided, or if any special sequence of construction is necessary. Subcontractor will maintain as-built drawings up to date at all times.

## 2.    CONTRACT DOCUMENTS

    2.1 Contract Documents Defined. The Contract Documents for this Agreement consist of this Subcontract Agreement, any and all addenda to this Subcontract Agreement, the bid package documents, including the plans and specifications, the prime contract and general conditions between Contractor and Owner, together with any amendments or change orders to this Subcontract Agreement, all of which are collectively referred to as the Contract Documents. The Contract Documents form this Subcontract (Agreement) and are fully incorporated. The Contract Documents are available from Contractor's office at 560 West 1700 South, Clearfield, Utah, and Subcontractor acknowledges that it has carefully examined them and understands them completely.

    2.2 Flow Down of Contract Documents. Subcontractor and its lower tier subcontractors and suppliers accept all Contract Documents and are bound by them. Subcontractor acknowledges that it understands and accepts the concept and procedures of the prime contract between Contractor and Owner and that they are binding upon Subcontractor. Subcontractor is bound to Contractor by the Contract Documents and shall assume toward Contractor, with respect to Subcontractor's performance, the obligations and responsibilities, which Contractor assumes toward Owner. The Contract Documents shall be construed in accordance with the laws of the State of Delaware. Subcontractor shall bind its lower-tier Subcontractors to the performance obligations and responsibilities, which Subcontractor assumes toward Contractor through appropriate and like flow-down provisions in the Subcontractor's Agreements with its sub-subcontractors and suppliers.

    2.3 Examinations and Acceptance of Contract Documents and Site. Subcontractor represents that it has carefully examined the plans and specifications, if any, for the Work, and has fully acquainted itself with all other conditions relevant to the Work, the site of the Work and its surroundings. Subcontractor agrees to assume the risk of such conditions, and will, regardless of such conditions or the expense or difficulty of performing the Work, fully complete the Work for the stated contract price. Except for items and information which Contractor is expressly obligated under this Agreement to furnish to Subcontractor, information on the site of the Work and local conditions at the site furnished by Contractor are not guaranteed by Contractor and are furnished for the convenience only of Subcontractor.

    2.4 Acceptance of Intent of Contract Documents. The specifications and drawings, if any, may not be complete in every detail. Subcontractor shall comply with their manifest intent and general purpose, taken as a whole, and shall not avail itself of any errors or omissions to the detriment of the Work. Should any conflict, error, omission or discrepancy appear in the drawings and specifications, Subcontractor shall notify Contractor at once and Contractor will issue written instructions to be followed. If Subcontractor proceeds with any of the Work in question prior to receiving written instructions, all necessary corrections shall be at Subcontractor's expense.

    2.5 Priority of Contract Documents. The Contract Documents should, if possible, be read so as to give all provisions meaning and application. If, however, a conflict exists between this Agreement and other Contract Documents, this Agreement shall have priority

Contractor:
**ODYSSEY INTERNATIONAL**
**560 WEST 1700 SOUTH**
**CLEARFIELD, UT. 84015**

Subcontractor:
**LGS GROUP, LLC**
**80 FISHER ROAD**
**UNIT 49**
**CUMBERLAND, RI 02864**

| | |
|---|---|
| Telephone: | 800-958-8582 |
| FAX: | 800-958-8284 |

| | |
|---|---|
| Telephone: | 401-333-9995 |
| FAX: | 401-334-6003 |

CONTRACTOR AND SUBCONTRACTOR HAVE CAREFULLY AND COMPLETELY READ THIS ENTIRE AGREEMENT, UNDERSTAND THEIR RIGHTS AND OBLIGATIONS, AND CERTIFY THAT THEY SIGN HAVING FULL AND COMPLETE AUTHORITY.

1/30/07
Date

Contractor:        ODYSSEY INTERNATIONAL,

By _____

Whitney McBride
(Print Name of Person Signing on Behalf of Contractor)

Its_____President_____

1/35/2007
Date

Subcontractor:    L.G.S Group, LLC

By _____

JAMES LAWSON
(Print Name of Person Signing on Behalf of Subcontractor)

Its_____V.P_____

and control. If this Agreement is silent as to a provision contained in other Contract Documents, that silence does not imply non-enforcement of the contract provision.

## 3.    PROSECUTION OF WORK

3.1 Commencement of Work.  Subcontractor shall commence the Work to be performed under this Agreement no less than three days after receipt of Notice to Proceed from Contractor and shall prosecute and complete its Work in accordance with the Contract Documents.

3.2 Prosecution of the Work.  Subcontractor shall proceed with each and every part of this Agreement in a prompt and diligent manner.  Subcontractor, without additional compensation, shall perform this Subcontractor Agreement at the times, in the order and in the manner as Contractor may direct.  Subcontractor shall commence, continue and complete its performance of the Work so as not to delay Contractor, Owner, or other contractors or subcontractors so as to insure timely completion of the prime contract.

3.3 Schedules.  Subcontractor shall furnish sufficient forces to assure proper performance of its Work under this Agreement in strict compliance with all schedules, including amended schedules, as may be required or provided by Contractor.  At the request of Contractor, Subcontractor shall provide a schedule of its Work under this Agreement showing timely completion.

3.4 Time is of the Essence.  Any time specified for the completion of this Agreement, or portion thereof, is a material provision of this Agreement, and time is of the essence.  Subcontractor agrees to be bound by the completion dates and schedule, if any, or subsequent amended schedules.

3.5 Liquidated Damages.  Regardless of whether Contractor is assessed liquidated damages by Owner, Subcontractor shall pay to Contractor the sum of $1000 per calendar day for any period during which the Subcontractor's Work under this Agreement exceeds the time provided for completion.  Subcontractor and Contractor agree that this assessment of liquidated damages reasonably approximates actual damages, is not a penalty and fairly compensates Contractor for damages which are difficult or impossible to quantify caused by the late completion. Damages assessed only after sub-contractor is given notice of their damages, delays and/or lack of performance.

3.6 Quality Personnel.  Subcontractor shall be responsible for selecting personnel who are well qualified to perform the required Work.  All Subcontractor personnel entering Owner's installation shall conform to all security regulations and other regulations, rules and laws that may be in effect during the period of this Agreement.  Any employee of Subcontractor deemed by Contractor, in Contractor's discretion, to be objectionable shall be removed from the jobsite immediately on Contractor's request and shall be promptly replaced by Subcontractor at no extra expense to Contractor.

3.7 Right of Joint-Check Payment.  Contractor, at its option, may make any payment due by check payable jointly to Subcontractor and any of its Subcontractors or suppliers who have performed Work or furnished materials under this Agreement.

3.8 Proper Superintendence.  At all times during performance of this Agreement and until the Work is completed and accepted, Subcontractor shall directly superintend the Work or assign and have on the jobsite a competent superintendent who is satisfactory to Contractor and who has authority to act for Subcontractor.

3.9 Subcontractor Responsible for Own Work.  If subcontractor fails to supply sufficient forces, equipment or materials to prosecute the Work according to the schedule or other requirements of this Agreement, Contractor may use its own forces, equipment or materials to supply such portions of the Work as are necessary to increase the rate of progress of the Work and Contractor may deduct the reasonable cost thereof with reasonable overhead and profit from the subcontractor.

3.10 Subcontractor Responsibility for Own Work.  Subcontractor shall be responsible for his own work, property and/or materials until completion and final acceptance of the Contract by the Owner, shall bear the risk of any loss or damage until such acceptance and shall pay promptly for all materials and labor furnished to the project.  In the event of loss or damage, he shall proceed promptly to make repairs or replacement of the damaged work, property and/or materials at his own expense as directed by the Contractor.  Subcontractor waives all rights he might have against Owner and Contractor for loss or damage to Subcontractors' Work, property or materials.

3.11 Warranty.  During the warranty period established by the Contract Documents, and if no such period is specified, for a period of one year from the date of Project completion, Subcontractor agrees to make good, solely at its expenses, all defects due to defective workmanship or materials and also all damage to all other work resulting therefrom.  Subcontractor further agrees to execute, in writing, any warranties, maintenance agreements or other documents related to its work as required by the Contract Documents. Subcontractor's responsibility for latent defects extends beyond the warranty period to the extent applicable statutes permit.

4.    **PAYMENT**

4.1 Contract Price. In consideration of the complete and timely performance of all Work under this Agreement, Contractor shall pay to Subcontractor the sum of **($431,055) FOUR HUNDRED THIRTY ONE THOUSAND FIFTY FIVE AND NO/100 DOLLARS.** All pay requests under this Agreement shall be rounded to the nearest dollar.

4.2 Subcontractor will be paid only after Contractor Receives Payment. CONTRACTOR'S RECEIPT OF PAYMENT FROM OWNER IS AN EXPRESS CONDITION PRECEDENT TO CONTRACTOR'S PAYMENT OBLIGATIONS TO SUBCONTRACTOR.

4.3 Information Necessary for Payment. Regardless of the time of performance under this Agreement, Subcontractor shall provide the following certificates, schedules and information to Contractor prior to any payment under this Agreement.

(a)    On or before the 25th day of each month, Subcontractor shall deliver to Contractor an application for payment showing the percentages of completion and value of each item of work completed to that date.

(b)    Certificates of insurance. (See Paragraph 7 of the Agreement.)

(c)    Invoices showing each principal category of Work, which substantiates amounts requested in such detail as, requested by Contractor for determining progress payments.

(d)    Certified payroll information in compliance with Davis Bacon and related act regulations, if required.

(e)    As-builts updated as required by Project Manager.

(f)    Submittal information and shop drawings as required by Contractor.

(h)    Partial or final release of claims, executed by Subcontractor, its sub-Subcontractors and suppliers. (Subcontractor acknowledges compensation for execution of these partial and final releases.)

(i)    Current State Contractors License

4.4 Right to Hold Retention. Contractor may, at its option, withhold retention from subcontractor's approved progress payments. The rate of retention shall be equal to the percentage retained from Contractor's payment by the Owner for the subcontract Work, provided such rate is not more than 5% of such payment. If there is no provision for retention in the Contract Documents, Contractor may require a rate of retention not to exceed 5% of the value of the completed portion of the subcontract work.

4.5 Right of Offset. Contractor may offset against any sums due Subcontractor under this Agreement the amount of any liquidated obligations of Subcontractor to Contractor, whether or not arising out of this Agreement.

4.6 Right to Withhold upon Breach. In the event of any breach of Subcontractor of this Agreement or in the event of the assertion by others of any claim against Owner, Contractor or Contractor's surety, which claim arises out of Subcontractor's performance, Contractor may, but is not required to, retain out of any payments due to Subcontractor an amount sufficient to protect Contractor from any and all loss, damage or expense therefrom, until the claim has been adjusted by Subcontractor to the satisfaction of Contractor.

4.7 Payment Is Not Approval. It is not to be inferred from the fact that Contractor makes payments to Subcontractor under this agreement that Contractor accepts, or has approved, any work performed by Subcontractor. Contractor may not waive its right to insist on full compliance by Subcontractor with all the requirements of the contract documents except in a written document, approved in writing by Owner, and specifying the precise things accepted by Contractor.

5.    **CHANGES**

5.1 Consent to Changes. Contractor may make changes in the Work to be performed and materials to be furnished under this Agreement at any time by written order and without notice to Subcontractor's surety. Subcontractor shall promptly perform its Agreement as changed.

5.2 Written Change Orders. No alteration, addition, omission or change shall be made in the Work or the method or manner of performance of the Work except upon written change order of Contractor. Any change or adjustment in the contract price by virtue of such Change Order shall be specifically stated in the applicable Change Order. Prior to the issuance of any Change Order, contractor may require Subcontractor to furnish to Contractor a detailed breakdown showing the value of the Work, labor, services and materials altered, added, omitted or changed by the proposed Change Order. If an agreement as to monetary allowance or any other term in the Change Order cannot be reached, Contractor, by an authorized representative, may direct Subcontractor in writing to perform the Work with the final adjustment reserved until final completion of both this Agreement and the Prime Contract. The monetary amount for the performance of any Change Order shall not exceed the allowance set forth in Subcontractor's prior price breakdown.

5.3 Limitation of Time Extensions Arising from Changes. Any extension of time needed as a result of a proposed Change Order shall be requested by Subcontractor, in writing, prior to the issuance of the Change Order, and shall be incorporated into the change order at the discretion of Contractor.

5.4 Changes Incorporated into Contract Documents. All changes in the Work ordered in writing by Contractor shall be deemed to be part of the Work under this Agreement and shall be performed and furnished in strict accordance with all of the terms and provisions of the Contract Documents.

## 6.    CLAIMS AND DISPUTES

6.1 Claims for Extras or Omissions. A claim for extras or omissions will not be honored for payment or credit unless authorized in writing by the Contractor prior to the commencement of the Work (extra or omissions) or delivery of materials resulting from the claimed extras or omissions. This condition applies equally to omissions, as may be required, of any or all of the Work, for which omissions a credit order will be allowed on the Subcontract price by the Subcontractor.

6.2 Timely Notice of Claim. Subcontractor agrees to make all claims, other than claims for extras or omissions, for which Owner is or may be liable in the manner provided in the Contract Documents for like claims by Contractor upon Owner. Notice of such claims shall be given by Subcontractor to Contractor within one week prior to the beginning of Subcontractor's Work for which the claim is to be made, or immediately upon Subcontractor's knowledge of the events which comprise the claim, whichever shall occur first. Otherwise the claim shall be deemed waived.

6.3 Agreement to Mediate Dispute. The Contractor and Subcontractor shall submit all unresolved claims, counterclaims, disputes, controversies, and other matters in question between them or arising out of or relating to this Agreement or the breach of the Agreement (Dispute) to mediation prior to either party initiating against the other a demand for arbitration pursuant to Paragraph 6.4 below, unless delay in initiating or prosecuting a proceeding in an arbitration or judicial forum would prejudice the Contractor or Owner. The Contractor and Subcontractor shall agree in writing as to the identity of the mediator and the rules and procedures of mediation. If the Contractor and the Subcontractor cannot agree, the dispute shall be submitted to mediation under the then current Construction Industry Mediation Rules of the American Arbitration Association.

6.4 Agreement to Arbitrate. Notwithstanding other Contract Documents provisions to the contrary, all Disputes that the Contractor and Subcontractor are unable to resolve by mediation shall be decided by arbitration, subject to the limitations stated in paragraph 6.5 below. The Agreement to arbitrate and any other Agreement or consent to arbitrate entered into in accordance with this Agreement shall be specifically enforceable under the prevailing law of the State of Delaware; or if a court rules that Delaware does not have jurisdiction, the prevailing law of any court having jurisdiction. The Contractor and Subcontractor shall agree in writing as to the identity of the arbitrator(s) and the rules and procedures of the arbitration. If the Contractor and Subcontractor do not agree, then the Contractor and the Subcontractor shall submit the dispute to arbitration under the then current Construction Industry Rules of the American Arbitration Association.

6.5 Notice of Arbitration Demand. Notice of demand for arbitration must be filed in writing with the other party to this Agreement and with the Arbitrator(s). The demand must be made within a reasonable time after the dispute has arisen, but not prior to or during the pendency of the meditation as agreed in paragraph 6.3. In no event may the demand for arbitration be made after the date on which institution of legal or equitable proceedings based on such disputes in question would be barred by the applicable statute of limitations.

6.6 Parties to the Arbitration. No arbitration arising out of or relating to this Agreement may include, by consolidation, joinder or in any other manner, any person or indemnitor who is not a party to this Agreement unless both parties agree otherwise in writing. No consent to arbitration in respect of a specifically described dispute will constitute consent to arbitrate any other dispute which is not specifically described in such consent.

6.7 Final Award. The award rendered by the arbitrator(s) will be final, judgment may be entered upon it in any court having jurisdiction, and the award will not be subject to modification or appeal. In any judicial proceeding to enforce this Agreement to arbitrate, the only issues to be determined will be those set forth in 9 U.S.C. §4, Federal Arbitration Act, and the court without a jury shall determine these issues. All other issues, such as arbitratibility, prerequisites to arbitration, compliance with contractual time limits, applicability of indemnity clauses, clauses limiting damages and statutes of limitations shall be for the arbitrator(s), whose decision shall be final and binding. There shall be no interlocutory appeal of an order compelling arbitration.

6.8 Continuation of Work. Unless otherwise agreed in writing or upon default of Subcontractor as provided by this Agreement, the Subcontractor shall continue to carry out its responsibilities under this Agreement during any Dispute, and the Contractor shall continue to make payments in accordance with this Agreement.

## 7. INSURANCE AND INDEMNITY

**7.1 Subcontractor's Liability Insurance.** Before commencing work on the project, Subcontractor and its subcontractors of every tier will supply to Contractor duly issued certificates of insurance, which name Contractor and owner as additional insureds, per CG2010 1185 or CG2010 10/01 with CG2037 10/01 or their equivalent. That the liability insurance policies, including commercial liability, automobile liability, and excess liability, shall be endorsed to provide (1) that the insurance shall apply to Contractor as though a separate policy had been issued to Contractor, and (2) that the coverage afforded to Contractor is primary and any other insurance in force for Contractor will be excess and will not contribute to the primary policies. If additional insurance coverage or greater policy limits are required by the contract documents, said provisions shall control.

**7.1.1 Worker's Compensation.** Claims under Worker's compensation, disability benefits and other similar employee benefits acts that are applicable to the Work performed;

**7.1.2 Employers Liability.** Claims for damages because of bodily injury, occupational sickness or disease or death of Subcontractor's employees under any applicable employer's liability law;

**7.1.3 Non-Employee Liability.** Claims for damages because of bodily injury or death of any person other than Subcontractor's employees;

**7.1.4 Bodily Coverage.** Claims for damages insured by usual personal injury liability coverage that are sustained (1) by any person as a result of an offense directly related to the employment of such person by the Subcontractor or; (2) by any other person;

**7.1.5 Property Liability Claims.** Claims for damages other than to the Work itself, because of injury to or destruction of tangible property, including loss of use; or

**7.1.6 Motor Vehicle Liability.** Claims for damages because of bodily injury or death of any person or property damage arising out of the ownership, maintenance or use of any motor vehicle.

**7.2 Comprehensive General and Automobile Liability Insurance.** The Subcontractor's Comprehensive General and Automobile Liability Insurance, as required by this Agreement, shall be written for not less than the following limits of liability:

**7.2.1 Comprehensive General Liability:**
Bodily Injury:
$1,000,000.00 each occurrence
$2,000,000.00 aggregate

Property Damage:
$500,000.00 each occurrence
$1,000,000.00 aggregate
Or $1,000,000 combined single limit, $2,000,000 aggregate.

**7.2.2. Comprehensive Automobile Liability:**
Bodily Injury:
$1,000,000.00 any person/accident

Property Damage:
$500,000.00 per accident
Or $1,000,000 combined single limit per accident

**7.3 Single Policy or Combination.** Comprehensive General Liability Insurance may be obtained under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an excess or umbrella liability policy.

**7.4 Cancellation of Polices.** The foregoing policies shall contain a provision that coverage afforded under the policy shall not be canceled or expire until at least thirty days written notice has been given to the Contractor and shall include coverage for this Agreement and an endorsement making the Owner and General Contractor an additional insured under the policies.

7.5 Provide Certificates:  Prior to commencement of the Work, Subcontractor shall furnish the original of its certificate of insurance showing such coverage to be in force directly to Contractor.  Subcontractor shall maintain during the entire period of its performance under the Agreement the minimum insurance required.

7.6 Waiver of Subrogation.  The Subcontractor waives all rights against the Contractor, its surety, the Owner and Contractor's employees for damages during construction covered by any property insurance as set forth in the Contract Documents.  Subcontractor agrees to require similar waivers from its Subcontractors, consultants and agents.

7.7  Indemnity.  To the fullest extent permitted by law, subcontractor shall indemnify and hold harmless Contractor and Owner and their successors and assigns and all of their agents and employees from and against all claims, damages, losses and expenses including but not limited to attorney's fees arising out of or resulting from the performance of Subcontractor's Work under this Agreement provided that any such claims, damages, loss or expense is attributable to bodily injury, sickness, disease, death or damage to or destruction of tangible property (other than the Work itself), including the loss of use resulting there from, and caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly employed by Subcontractor or anyone for whose act Subcontractor may be liable; provided however, that this indemnification provision shall not apply to any damages caused by or resulting from the fault of any person indemnified hereunder.  In any and all claims against the person indemnified hereunder by any employee of Subcontractor or anyone directly or indirectly employed by Subcontractor, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under workers compensation acts, disability benefit acts or employee benefits acts.  Contractor shall have the right to withhold from any payment due or to become due to Subcontractor an amount sufficient to protect and indemnify Contractor from any and all such claims, loss, costs, expense, liability, damage or injury including attorney's fees.  Subcontractor will provide the defense for the parties indemnified hereunder for any such claims, and will employ counsel satisfactory to the parties indemnified.  This indemnity shall be covered by Subcontractor's comprehensive general liability insurance policy.

8.     BONDS   Not applicable.

9.     **PERMITS, LICENSES, TAXES, FEES, ETC.**

Subcontractor shall, at its own cost and expense, apply for and obtain all necessary permits and licenses and shall conform strictly to the laws and ordinances enforced in the locality under which this Agreement is being performed.  Subcontractor shall hold harmless Contractor against any liability by reason of Subcontractor having failed to pay federal, state, county or municipal taxes or fees.

10.    **TERMINATION**

10.1 Termination for Default.  The Contractor may terminate the Subcontractor as follows:

a.     In the same manner and upon the same notice and terms as the Contractor's performance may be terminated by the Owner;

b.     If Subcontractor is adjudged bankrupt, or if it makes a general assignment for the benefit of its creditors, or if a receiver is appointed on account of its insolvency;

c.     If Subcontractor persistently or repeatedly refuses or fails to supply enough properly skilled Workers or proper materials;

d.     If Subcontractor fails to make prompt payment to its employees, subcontractors, or suppliers;

e.     If Subcontractor disregards instructions of the Contractor or laws and ordinances of any public authority having jurisdiction; or

f.     If Subcontractor fails to observe or perform the provisions of this Agreement.

The Contractor may, without prejudice to any right or remedy and after giving the Subcontractor and its surety, if any, five days written notice, terminate Subcontractor's right to proceed with the Work.  In the event of such notice, the Contractor may take over and prosecute the Work to completion, by Agreement or otherwise, and the Subcontractor shall be liable to the Contractor for any excess cost occasioned by the Contractor; and, in such case, the Contractor may take possession of and utilize in completing the Work such materials, equipment, tools, and machinery that are on site for the Work and necessary for the Work.

If Contractor so terminates this Agreement, Subcontractor shall not be entitled to any further payment under this Agreement until Subcontractor's Work has been completed and accepted by Owner and payment has been received by Contractor from Owner with respect thereto.  In the event that the unpaid balance due exceeds Contractor's cost of completion, the difference shall be paid to Subcontractor; but if such expense exceeds the balance due, Subcontractor agrees to promptly pay the difference to Contractor.

10.2 Termination for Convenience. Contractor shall have the right to terminate this Agreement, by written notice, without Subcontractor being in default, for any cause or for its own or Owner's convenience, and require Subcontractor to immediately stop Work. In such an event, Contractor shall pay Subcontractor for that Work actually performed in an amount proportionate to the sum payable under this Agreement after payment is received by Contractor from Owner. Contractor shall not be liable to Subcontractor for any other costs nor for prospective profits on Work not performed.

## 11.    COMPLIANCE WITH LAW AND SAFETY

Subcontractor agrees to comply in all respects with federal, state and local law applicable to the prosecution of Work under this Agreement, including such specific laws to which Contractor is bound by the Contract Documents. Such compliance shall include, but not be limited to, payment by Subcontractor of wages to employees of Subcontractors in compliance with the Davis-Bacon Act and the maintenance of a drug-free work place as such laws and others may apply. Subcontractor's failure to comply with federal, state and local law applicable to the persecution of Work under this Agreement shall be grounds for termination for default of this Agreement.

## 12.    CLEAN UP AND FINAL INSPECTION

12.1 Clean Up. Subcontractor shall at all times during the performance of the Work, and as directed by Contractor, remove from the jobsite and the vicinity thereof all debris and rubbish caused by Subcontractor's operations.

12.2 Inspection. Contractor and Subcontractor will jointly conduct a pre-final inspection prior to Subcontractor requesting a final inspection. Any discrepancies noted will be corrected prior to any final inspection. Contractor may schedule more than one pre-final inspection if it determines it necessary. When Subcontractor is ready for final inspection, it shall make a request of final inspection to Contractor. The final inspection shall be requested in advance as agreed upon during project negotiations, then the request shall be submitted a minimum of one workday prior to the desired final inspection date. Any discrepancies noted shall be corrected within the time specified by Contractor and prior to final payment.

## 13.    INDEMNIFICATION AGAINST MECHANICS LIENS AND PAYMENT BOND CLAIMS

Subcontractor shall defend, indemnify and hold Contractor, Owner and Contractor's surety harmless from any and all claims, suits, losses or liability including mechanic's liens, payment bond claims, attorney's fees and litigation expenses arising out of Subcontractor's failure to pay persons furnishing labor, services, material or equipment in connection with the Work. Subcontractor shall promptly and diligently take action at its own expense to satisfy, remove or discharge such claims. Contractor shall have the right to withhold from any payment due or to become due to Subcontractor an amount sufficient to protect and indemnify Contractor from any and all such claims, suits, losses, liability including reasonable attorney's fees and expense of litigation.

## 14.    MISCELLANEOUS PROVISIONS

14.1 Non-Discrimination. In connection with the performance of this Agreement, Subcontractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, age, material status, being handicapped or a disadvantaged person.

14.2 Good Faith. Subcontractor shall exercise all reasonable care and diligence to prevent any actions or conditions, which could result in a conflict with Contractor's best interests. This obligation shall apply to the activities of the employees and agents of Subcontractor in their relations with the employees and agents of Contractor and Owner. Subcontractor, its employees or agents shall not communicate with representatives of Owner without the express written permission of Contractor.

14.3 Delaware Law. This Agreement shall be construed and governed by the laws of the State of Delaware.

14.4 Attorney's Fees. Should either Contractor or Subcontractor employ any attorney to protect or enforce its interests arising under this Agreement or to institute suit or demand arbitration to construe, enforce or rescind any of the provisions hereof, or to recover on a surety bond furnished by a party to this Agreement, the prevailing party shall be entitled to recover reasonable attorney' fees, costs and expenses incurred thereby.

14.5 Sever ability. If any portion of this Agreement is held as a matter of law to be unenforceable, the remainder of this Agreement shall be enforceable without such provisions.

14.6 <u>Limitation and Assignment.</u>  The Contractor and Subcontractor each bind itself, its successors, assigns and legal representatives to the terms of this Agreement.  Neither the Contractor nor the Subcontractor shall assign or transfer its interest in this Agreement without the written consent of the other; provided however, Contractor may assign this Agreement to Owner if required under the Contract Documents and if Owner accepts such assignments by notifying Subcontractor in writing.  Subcontractor hereby consents to such assignment to Owner and agrees to be bound to Owner as Contractor's assignee by the terms of this Agreement.

14.7 <u>Incorporation of Previous Agreements.</u>  This Agreement, including incorporated portions, constitutes the entire Agreement between the parties.  No oral representations or other Agreements have been made by Contractor except as stated in this Agreement.  This Agreement may not be changed in any way except as provided herein, and no term or provision hereof may be waived by Contractor except in writing signed by its duly authorized officer or agent.

<u>Notices.</u>  All notices required by this Agreement or other communications to either party by the other shall be deemed given when made in writing and deposited in the United States Mail, certified, postage prepaid, addressed as follows:

14.7 <u>Government Required Insert Clauses.</u>  These are required to be included in all subcontractors, based on their applicability, in their entirety in emphasis to any and all other sections and clauses in the specification as previously included in the contract

    14.7.1  **52.203-6** RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1995) 100,000 OR GREATER

    14.7.2  **52.203-7** ANIT-KICKBACK PROCEDURES (JUL 1995) 100,000 OR GREATER

    14.7.3  **52.209-6(b)** FIRST TIER SUBCONTRACTORS TO DISCLOSE DEBARRMENT OR PROPOSED DEPARRMENT.  "PROTECTING THE GOVERNMENTS INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEPARRMENT (JUN 2005 25.000 OR GREATER

    14.7.4  **52.222-2** PROHIBITION OF SEGRAGATED FACILITIES (FEB 1999)

    14.7.5  **52.222-4** CONTRACT WORK HOURS AND SAFETY STANDARD ACT – OVERTIME COMPENSATION (SEP 2000) 100,000 OR GREATER

    14.7.6  **52.222-11** SUBCONTRACTS (LABOR STANDARDS (FEB 1998))

    14.7.7  **52.222-26** EQUAL OPPORTUNITY (APR 2002)

    14.7.8  **52.222-27** AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (FEB 1999) 10,000 OF GREATER

    14.7.9  **52.222-35** EQUAL OPPORUTNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (DEC 2001) 25,000 OR GREATER

    14.7.10  **52.222-36** AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998) 10,000 OR GREATER

    14.7.11  **52.222.37** EMPLOYMENNT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (DEC 2001) 10,000 OR GREATER

    14.7.12  **52.223-13** CERTIFICATION OF TOXIC CHEMICAL RELEASE REPORTING 100,000 OR GREATER

    14.7.13  **52.223-4** TOXIC CHEMICAL RELEASE REPORTING (AUG 2003) 100,000 OR GREATER

    14.7.14  **52.224-2** PRIVACY ACT

    14.7.15  **52.225-13** RESTRICTIIONS ON CERTAIN FORIGHN PRUCHASES (DEC 2003)

    14.7.16  **52.227-1** AUTHORIZATION AND CONSENT

    14.7.17  **25.237-27** PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (OCT 2003)

    14.7.18  **52.236-12** CLEANING UP (APR 1984)

    14.7.19  **52.244-6** SUBCONTRACTS FOR CONNERCIAL ITEMS (DEC 2004)

    14.7.20  **52.248-3** VALUE ENGINEERING – CONSTRUCTION (FEB 2000)

    14.7.21  **252.225-7001** PROHIBITION ON PERSONS CONVICTED OR FRAUD OR OTHER DEFENCE-CONTRACT-RELATED FELONIES (DEC 3004)

    14.7.22  **252.225-7016** RESTRICTION ON ACQUISITION OF BALL AND ROLLER BEARINGS (MAY 2004)

    14.7.23  **252.226-7001** UTILIZATION OF INDIAN ORGANIZATION AND INDIAN-OWNED ECONOMIC ENTERPRIZES, AND NATIVE HAWAIIAN SMALL BUSINESS CONCERNS (SEP 2004)

    14.7.24  **252.247-7024** NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (MAR 2000)



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 1.14 |
| Certified Fee | | 2.65 |
| Return Receipt Fee (Endorsement Required) | | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | | 4.10 |
| Total Postage & Fees | $ | 10.04 |

521.00

Sent To
SAFECO Insurance
Street, Apt. No.; or PO Box No.
Company of America
C/o Stirling S. Boardhead, Esq.
City, State, ZIP+4
1100 E. 6600 S., #400
Salt Lake City, UT 84121-2400

PS Form 3800, Au

7006 3450 0000 9072 3124



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

| Postage | $ 1.14 |
| Certified Fee | 2.65 |
| Return Receipt Fee (Endorsement Required) | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | 4.10 |
| Total Postage & Fees | $ 10.04 |

7006 3450 0000 9072 3112

Sent To
Odyssey International, Inc.
C/o Resident Agent:
The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

PS Form 3800, Au

THE LAW OFFICE OF

# SHAWN C. WHITTAKER, P.C.

1010 ROCKVILLE PIKE, SUITE 607
ROCKVILLE, MARYLAND 20852
PHONE (301) 838-4502
FAX (301) 838-4505

SHAWN C. WHITTAKER
ADMITTED IN MD, VA, DC
shawn@whittaker-law.com

ARI B. FRIEDMAN
ADMITTED IN MD AND DC
ari@whittaker-law.com

## NOTICE OF PAYMENT BOND CLAIM PURSUANT TO FEDERAL MILLER ACT

December 14, 2007

### BY FACSIMILE AND CERTIFIED MAIL RETURN RECEIPT REQUESTED

To:   **VIA FACSIMILE AND CERTIFIED
MAIL NO. 7006 3450 0000 9072 3112**
Odyssey International, Inc.
c/o Resident Agent
The Corporation Trust Company
Corporation Trust Cneter
1209 Orange St.
Wilmington, DE 19801

**CERTIFIED MAIL NO. 7006 3450 0000
9072 3129**
SAFECO Insurance Company of America
c/o Stirling S. Broadhead, Esq.
1100 E. 6600 S., #400
Salt Lake City, UT 84121-2400

Re:   C-17 Flight Simulator
Dover Air Force Base, DE
Contract No. W912BU-06-C-0008
Payment Bond Date:  July 13, 2006
Bond No: 6431948
Claim of: LGS Group, LLC
Amount of Claim: $429,566.69

LAW OFFICE OF SHAWN C. WHITTAKER, P.C.

This notice is being sent pursuant to the provisions of 40 U.S.C. § 3131, et seq.

The undersigned is legal counsel to LGS Group, LLC whoc contracted with ODYSSEY INTERNATIONAL, INC. to furnish drywall, painting, metal studs and EIFS for the above mentioned project pursuant to the aforementioned payment bond between the Principal, Odyssey International, Inc., and the Surety, SAFECO Insurance Company of America. The most recent materials and labor supplied by LGS was on October 15, 2007. There remains due and owing to LGS for materials and labor furnished for the prosecution of the above mentioned project the sum $429,566.69, as of December 14, 2007.

If LGS GROUP, LLC'S claim is not satisfied within thirty (30) days from the date of this letter, LGS GROUP, LLC does hereby reserve its claim to file suit pursuant to the payment bond referred to above.

Executed this 14th day of December, 2007.

LGS GROUP, LLC

By: _____
Its Attorney and Agent
Shawn C. Whittaker

CC:    LGS Group, LLC
       H. Burt Ringwood, Esq.

$221.00

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Odyssey International, Inc.
C/o Resident Agent:
The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Scott Babcock_    ☐ Agent
☐ Addressee

B. Received by ( *Printed Name* )    C. Date of Delivery
DEC 1 9 2007

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)    ☐ Yes

2. Article Number
(*Transfer from service label*)    7006 3450 0000 9072 3112

PS Form 3811, February 2004    Domestic Return Receipt    $221.00    102595-02-M-1540

5221.001

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
STIRLING BROADHEAD           12/21/07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

1. Article Addressed to:

SAFECO Insurance
Company of America
C/o Stirling S. Boardhead, Esq.
1100 E. 6600 S., #400
Salt Lake City, UT 84121-2400

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes

2. Article Number
   (Transfer from service label)      7006 3450 0000 9072 3129

PS Form 3811, February 2004    Domestic Return Receipt    5221.005    102595-02-M-1540

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| LGS Group, LLC | Odyssey International, Inc<br>Safeco Insurance Co. of America |

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) 302-651-0113
William W. Erhart, P.A.
800 N King St., Ste 302 Wilmington, DE 19801

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** ☐ 310 Airplane | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☒ 130 Miller Act | Liability | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | ☐ 330 Federal Employers' | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 345 Marine Product | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | Liability | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 355 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | Product Liability | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | Injury | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | Actions | | |

(Personal Injury section): ☐ 362 Personal Injury - Med. Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability. **PERSONAL PROPERTY**: ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability. **PRISONER PETITIONS**: ☐ 510 Motions to Vacate Sentence; **Habeas Corpus:** ☐ 530 General; ☐ 535 Death Penalty; ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☐ 555 Prison Condition.

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
40 U.S.C § 3133

Brief description of cause:
Miller Act Case

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ 429,566.69

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE Jan 9, 2008

SIGNATURE OF ATTORNEY OF RECORD William W. Erhart

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

0 8 - 0 1 7

Civil Action No. _____

JAN - 9 2008

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____2_____ COPIES OF AO FORM 85.

_____
(Date forms issued)

X_____
(Signature of Party or their Representative)

X Elizabeth Colon
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action