IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of LGS GROUP, LLC<br><br>      Plaintiff,<br><br>v.<br><br>ODYSSEY INTERNATIONAL, INC. and SAFECO INSURANCE COMPANY OF AMERICA,<br><br>      Defendants. | CASE NO. 08-017 |

**ANSWER OF DEFENDANTS AND COUNTERCLAIM OF
DEFENDANT ODYSSEY INTERNATIONAL, INC.**

    Defendants Odyssey International, Inc. ("Odyssey") and Safeco Insurance Company of America ("Safeco") (collectively "Defendants"), by and through their counsel, H. Burt Ringwood and James Kipp, hereby answer Plaintiff's Complaint as follows:

    1.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Complaint and therefore deny the same.

    2.    Defendants admit that Odyssey is a corporation organized pursuant to the laws of the State of Utah. However, Odyssey affirmatively states that its principal place of business is located in Lancaster, Pennsylvania.

    3.    Defendants admit the allegations in Paragraph 3.

4. Defendants are without knowledge or information as to the allegations in Paragraph 4 and therefore deny the same.

5. Defendants incorporate their answers to Paragraphs 1 through 4 as if fully set forth herein.

6. Defendants admit the allegations contained in Paragraph 6.

7. Defendants admit the allegations contained in Paragraph 7.

8. In response to the allegations in Paragraph 8, Defendants admit that Defendant Odyssey entered into a Subcontract Agreement with Plaintiff dated December 4, 2006. Plaintiff contracted to perform the work provided in Section 1.1.1 of the Subcontract Agreement which language speaks for itself. Except for the aforesaid, Defendants deny the allegations contained in Paragraph 8.

9. Defendants admit the allegations of Paragraph 9.

10. Defendants deny the allegations contained in Paragraph 10.

11. Defendants deny the allegations contained in Paragraph 11.

12. Defendants deny the allegations contained in Paragraph 12.

13. Defendants deny the allegations contained in Paragraph 13.

14. Defendants deny the allegations contained in Paragraph 14.

15. Defendants deny the allegations contained in Paragraph 15.

16. Defendants deny the allegations contained in Paragraph 16.

17. Defendants deny the allegations contained in Paragraph 17.

18. Defendants admit that Defendants received by facsimile a Notice of Payment Bond Claim Pursuant to Federal Miller Act dated December 14, 2007. Defendants state that the

December 14, 2007 letter speaks for itself. However, except for the foresaid, Defendants deny that any amounts are due and owing on the contract.

19. Defendants are without knowledge or information regarding the allegations of Paragraph 19 and therefore deny the same.

20. Defendants are without knowledge or information regarding the allegations of Paragraph 20 and therefore deny the same.

21. Defendants deny the allegations of Paragraph 21 and affirmatively state that Defendants have paid the contract amount in full.

22. Defendants incorporate their answers to the allegations in Paragraphs 1 through 21 as though fully set forth herein.

23. Defendants admit that Defendant Odyssey and Plaintiff entered into a Subcontract Agreement and the Agreement speaks for itself, except for the aforesaid, Defendants deny the allegations of Paragraph 23.

24. Defendants deny the allegations contained in Paragraph 24.

25. Defendants deny the allegations contained in Paragraph 25.

26. Defendants deny the allegations contained in Paragraph 26.

27. Defendants affirmatively state that Section 14.4 of the Subcontract Agreement speaks for itself, and except for the aforesaid Defendants deny the allegations of Paragraph 27.

28. Defendants incorporate their answers to the allegations in Paragraphs 1 through 27 as though fully set forth herein.

29. Defendants admit that Plaintiff performed portions of the work required in the Subcontract Agreement and affirmatively state that Defendant Odyssey made payments to or on

behalf of Plaintiff in an amount in excess of the work performed by Plaintiff. Except for the aforesaid, Defendants deny the allegations contained in Paragraph 29.

30.    Defendants admit that Plaintiff performed portions of the work required in the Subcontract Agreement and affirmatively state that Defendant Odyssey made payments to or on behalf of Plaintiff in an amount in excess of the work performed by Plaintiff. Except for the aforesaid, Defendants deny the allegations contained in Paragraph 30.

31.    Defendants admit that Plaintiff performed portions of the work required in the Subcontract Agreement and affirmatively state that Defendant Odyssey made payments to or on behalf of Plaintiff in an amount in excess of the work performed by Plaintiff. Except for the aforesaid, Defendants deny the allegations contained in Paragraph 31.

32.    Defendants admit that Plaintiff performed portions of the work required in the Subcontract Agreement and affirmatively state that Defendant Odyssey made payments to or on behalf of Plaintiff in an amount in excess of the work performed by Plaintiff. Except for the aforesaid, Defendants deny the allegations contained in Paragraph 32.

33.    Defendants admit that Plaintiff performed portions of the work required in the Subcontract Agreement and affirmatively state that Defendant Odyssey made payments to or on behalf of Plaintiff in an amount in excess of the work performed by Plaintiff. Except for the aforesaid, Defendants deny the allegations contained in Paragraph 33.

34.    Defendants deny the allegations contained in Paragraph 34.

35.    Defendants deny the allegations contained in Paragraph 35.

36.    Defendants incorporate their answers to the allegations in Paragraphs 1 through 35 as though fully set forth herein.

37. Defendants admit that Safeco has not paid Plaintiff the amount of $429,566.69. However, Defendants have not made payment because Plaintiff has been paid in an amount in excess of the value of the work performed by Plaintiff pursuant to the Subcontract Agreement. Except for the aforesaid, Defendants deny the allegations of Paragraph 37..

38. Defendants are without knowledge or information relating to the allegations of Paragraph 38 and therefore deny the same.

39. Defendants affirmatively state that Section 14.4 of the Subcontract Agreement speaks for itself, and except for the aforesaid Defendants deny the allegations of Paragraph 39.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim against Defendants upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has a duty to mitigate damages. Should discovery evidence a failure on its part to do so, this answering Defendant reserves the right to assert failure to mitigate damages as a separate and affirmative defense.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the doctrine of accord and satisfaction.

### FOURTH AFFIRMATIVE DEFENSE

Defendants assert that the Subcontract Agreement between Plaintiff and Odyssey requires that any disputes between the parties be submitted first to mediation and then to arbitration. Accordingly, Defendants claim as an affirmative defense arbitration and award.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims, if any, may be barred by estoppel, laches, and/or waiver.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claim for damages, if any, is barred by the fact that Defendants have paid to, or on behalf of Plaintiff the full amount of the Subcontract Agreement.

### SEVENTH AFFIRMATIVE DEFENSE

To the extent discovery in this action will support any additional affirmative defenses under Rule 8 of the FEDERAL RULES OF CIVIL PROCEDURE, Defendants assert such defense and specifically allege those and any other matters constituting avoidance or affirmative defenses.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claim for damages, if any, is barred by the provisions of the Subcontract Agreement providing Defendant Odyssey with the right of offset.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim for damages, if any, is barred by the provisions of the Subcontract Agreement providing Defendant Odyssey with the right to withhold payment to Plaintiff upon breach, by Plaintiff of the Subcontract Agreement.

### COUNTERCLAIM OF DEFENDANT ODYSSEY INTERNATIONAL, INC.

Defendant Odyssey International, Inc. ("Odyssey") hereby counterclaims and alleges against Plaintiff and Counterclaim Defendant LGS Group, LLC ("LGS") as follows:

1. To the extent this Court has subject matter jurisdiction over LGS' claims, this Court has jurisdiction over Odyssey's claims pursuant to Rule 13 of the FEDERAL RULES OF CIVIL PROCEDURE.

2. To the extent this Court has subject matter jurisdiction over this matter, venue lies in this Court.

## FACTS RELEVANT TO ALL COUNTS OF THE COUNTERCLAIM

3. Odyssey and LGS entered into a Subcontract Agreement dated December 4, 2006 in which LGS agreed to furnish labor and materials as described in Section 1.1.1 of the Subcontract Agreement.

4. Pursuant to the Subcontract Agreement LGS was to provide submittals in a timely manner so as to not cause delay to the project.

5. Despite many requests by Odyssey LGS refused to provide their submittals in a timely manner causing delay to the project.

6. The Subcontract Agreement required LGS to provide a third-party inspector to inspect the EIFS work to be done on the project as part of the Subcontract Agreement.

7. LGS continued to promise that they would provide the third-party inspector, however, LGS did not provide a third-party inspector which caused substantial delay to the project.

8. Because of LGS' failure to provide a third-party inspector for the EIFS work to be done on the project Odyssey was required to hire a third-party inspector to avoid further delay being caused by LGS.

9. LGS was required pursuant to the Subcontract Agreement to provide work on the project in a timely manner to avoid delay.

10. Despite the demands of Odyssey, LGS did not provide EIFS installers in a timely manner which caused substantial delay to the project.

11. Pursuant to the Subcontract Agreement, LGS was to provide attic installation to the project.

12. Despite the demands and requests of Odyssey, LGS refused to provide attic installation to the project claiming that the insulation was not part of its contract.

13. LGS' failure to provide installation as required by the contract caused substantial delay to the project and caused Odyssey to incur additional expense.

14. LGS fired its original EIFS contractor and failed to provide a qualified substitute.

15. After LGS' failure to provide qualified substitution for the EIFS installers they had fired, LGS rehired the original EIFS installers after several weeks of delay and poor workmanship.

16. Because LGS fired its original installers and failed to provide qualified replacement installers LGS' conduct created substantial delay to the project and resulted in additional costs to Odyssey.

17. The Subcontract Agreement provided that LGS would have labor and materials to complete the work in a timely manner.

18. LGS did not provide proper materials in a timely manner and was unable to procure materials because LGS did not have credit arrangements in place.

19. LGS' failure to have the proper materials on site caused substantial delay to the project and caused additional cost to Odyssey.

20. The Subcontract Agreement provided that LGS would perform the wall finishing and paint to the project.

21. LGS failed to provide qualified subcontractors and supervision which resulted in defective paint and wall finishes.

22. The defective paint and wall finishing had to be redone and reworked which caused substantial delay to the project and caused additional expense to Odyssey.

23. LGS submitted a product that did not meet specifications for the epoxy floor paint.

24. This nonconforming product had to be resubmitted to the Corps of Engineers causing further delays to the project and additional expense to Odyssey.

25. LGS hired several affiliates and/or subcontractors and suppliers to perform the work and provide materials under the Subcontract Agreement.

26. Odyssey has made payment to or on behalf of LGS in an amount in excess of the value of the Subcontract Agreement and the work performed.

27. LGS has failed to pay the affiliates, subcontractors and/or suppliers who are demanding payment from Odyssey and threatening to bring an action against Odyssey under the payment bond.

28. Article 13 of the Subcontract Agreement provides that LGS will indemnify Odyssey and Safeco against any and all claims arising out of LGS's failure to pay persons furnishing labor, services, material and or equipment in connection with the work LGS contracted to perform.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

29. Odyssey incorporates the preceding allegations as if fully set forth herein and further states the following:

30. Odyssey and LGS entered into a Subcontract Agreement dated December 4, 2006 in which LGS agreed to perform the work described in Section 1.1.1 of the Subcontract Agreement.

31. Section 1.3 of the Subcontract Agreement required LGS to submit shop drawings, samples, templates and material lists, etc. within three weeks from the date of the Subcontract Agreement.

32. Section 3 of the Subcontract Agreement provides among other things that LGS fulfill the Subcontract Agreement in a prompt and diligent manner; that LGS would commence, continue and complete its performance of the work so as to not delay the timely completion of the project; that LGS would furnish sufficient forces to assure proper performance of its work under the Subcontract Agreement in strict compliance with all schedules; that time was of the essence and that LGS agreed to be bound by the completion dates and schedules; that LGS agreed that LGS would be charged $1,000 per calendar day for any delay caused by LGS; that if LGS failed to supply sufficient forces, equipment and materials to prosecute the work Odyssey could use its own forces, equipment or materials to supply such portions of the work as were necessary to increase the rate of progress of the work; and Odyssey could deduct the reasonable costs thereof with reasonable overhead and profit from LGS.

33. LGS failed to provide prompt and diligent work to the project by, among other things, failing to: (1) make timely submittals; (2) have qualified subcontractors performing the work; (3) provide qualified subcontractors on the project in a timely manner and diligently prosecute the work; (4) provide proper and adequate materials for the work to be performed; and (4) to provide adequate supervision.

34. LGS breached the contract by its failure to provide prompt and diligent work to the project as set forth above which breach caused substantial delay to the project and additional costs to Odyssey.

35. LGS' breach of contract caused substantial damage to Odyssey in an amount not less than $160,000.

Wherefore, Odyssey prays for judgment against LGS for:

    a. an amount of at least $160,000;

    b. prejudgment interest;

    c. attorneys' fees and expenses;

    d. costs of this action;

    e. any other remedy this Court deems just and proper.

### SECOND CAUSE OF ACTION
### INDEMNIFICATION

37. Pursuant to Article 13 of the Subcontract Agreement, LGS agreed to indemnify Odyssey and Safeco against any and all claims, suits, losses or liability arising out of LGS's failure to pay persons furnishing labor, services, material or equipment in connection with LGS's work under the Subcontract Agreement.

38. Odyssey has made payment to or on behalf of LGS in an amount in excess of the value of the Subcontract Agreement and the work performed.

39. LGS has failed to pay the affiliates, subcontractors and/or suppliers who are now demanding payment from Odyssey and threatening to bring action against Odyssey under the payment bond.

40. LGS has a contractual obligation to defend Odyssey and Safeco from the claims being made by LGS's affiliates, subcontractors and/or suppliers.

41. Odyssey has incurred substantial expense in attorney fees and costs to defend against such claims.

42. LGS is obligated to indemnify Odyssey and Safeco for said expenses in an amount to be proven at trial.

43. To the extend Odyssey and/or Safeco makes payment to LGS's affiliates, subcontractors and/or suppliers, LGS is contractually obligated to indemnify Odyssey and Safeco for such payments in an amount to be proven at trial.

Wherefore, Odyssey prays for judgment against LGS for:

    a. indemnification in an amount to be proven at trial;

    b. prejudgment interest;

    c. attorneys' fees and expenses;

    d. costs of this action;

    e. any other remedy this Court deems just and proper.

Wherefore, having answered Plaintiff's Complaint and asserted counterclaims against Plaintiff, Odyssey and Safeco request that Plaintiff's Complaint be dismissed, that Plaintiff takes nothing thereby, that Defendants recover their costs of Court and attorneys' fees incurred in this matter, and for such other and further relief as the Court deems just and equitable.

                                                              ELZUFON AUSTIN REARDON TARLOV & MONDELL, P.A.

                                                               JAMES F. KIPP, ESQUIRE [#190]
                                                                Fox Run Business Park
                                                                2500 Wrangle Hill Road, Suite 210
                                                                Bear, DE 19701
                                                                302-327-1100

Dated: March 6, 2008                      Attorneys for Defendants

*Of Counsel:*
H. Burt Ringwood, Esquire [#5787]
STRONG AND HANNI
3 Triad Center, Suite 500
Salt Lake City, Utah 84180
Telephone: (801) 532-7080

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2008 a true and copy of Answer of Defendants and Counterclaim of Defendant Odyssey International, Inc. was served via electronically upon the following:

William W. Erhart, Esquire
William W. Erhart, P.A.
800 North King Street, Suite 302
Wilmington, DE 19801

_____
JAMES F. KIPP, ESQUIRE

Dated: March 6, 2008